Good morning, Your Honors. May it please the Court, my name is Jehan Thomas. I represent the petitioner in this case. There are three issues for this Court review. The errors committed by the immigration judge first in dismissing the ineffective assistant's claim to excuse the untimely filing of the asylum application, his erroneous finding regarding petitioner's firm resettlement in Mali, and his speculation and conjecture regarding the medical certificate which allegedly supported his adverse credibility finding with respect to the journal's 1998 incident. Contrary to the government assertion, the historical facts of this case have been established, and they are not in dispute. But if there is a question as to the credibility of the petitioner in resolving the excuse for not timely filing the claim, isn't that a contested issue of fact with regard to the timeliness issue? Well, Your Honor, my understanding is that the immigration judge made an explicit adverse credibility finding with respect only to the January 1998 incident, and absent an adverse credibility filing, this Court's precedent said that this Court must accept the petitioner's contention as true. But isn't it part and parcel of the determination by the immigration judge as to whether or not he had a legitimate excuse for not filing within a year? That is correct, Your Honor, but when we find that the speculation and the conjecture which is contrary to the evidence of the record, that the immigration judge based his speculation regarding why he did not file his timely asylum application, this speculation can not... But that, by definition, Counsel, is a contested issue of fact. You're arguing that there is insufficient evidence to support the IJ's credibility determination, but it seems to me that this case is different from those Ninth Circuit cases where we have gone ahead and ruled as a matter of law on the timeliness issue, because here there were contested facts as to the timeliness. My understanding, Your Honor, of a contested fact is the petitioner presents A, B, and C, and then the government presents a contrary evidence or a disputed fact, which is a D, E, and F, and now the trier fact is with this disputed fact, but the disputed fact cannot be a petitioner's testimony, and then the judge's speculation and an evidence contrary based on his own conjecture. Well, part and parcel of his explanation for why he didn't supply his asylum application within a year was that he relied on the notario. That is correct. And in addressing the credibility of that explanation, the immigration judge found that he didn't, that there was no nexus between his interaction with the notario and his lateness in filing. That, too, is a contested issue of fact on timeliness, is it not? I understand, Your Honor, but where he actually believed that his reliance was unreasonable because he imputed a knowledge of the asylum to a petitioner because his brother-in-law told him to come in from Lebanon. The Lebanese community here told him that he should legalize his status. And three, he was able to file a social security, and he said, well, if you were able to do all this stuff, then you're able to file for an asylum. However, the evidence here, petitioner unequivocally stated that he didn't know about the asylum. His brother-in-law never told him. But that goes to the factual dispute as to whether or not, A, all that is true, and B, whether your client relied on it in justifying his failure to file within a year. I just don't see how this is not contested fact. I don't see it contested fact because the evidence was submitted based on a petitioner's testimony. Which the immigration judge disbelieved. Yeah, but disbelieved for no other reason other than his speculation and conjecture. Well, you're arguing that it's speculation and conjecture, but the government is not conceding that those facts are all accurate, are they? I understand your point, but the petitioner's unequivocal testimony reflects otherwise, other than what the immigration judge has found, for example. But in all of our prior cases, there has not been a dispute over the fact. That is correct. In Saman V. Hall, this court found that you had jurisdiction because there was no dispute that the petition did not comply with the Rosada. In this case, there is no dispute that the petition has actually complied with the Rosada requirement. But the immigration judge found that there isn't a nexus, so it doesn't matter whether the notarial was ineffective because the interaction with the notarial had nothing to do with the lateness in filing. No, as a matter of fact, there was a lateness in filing as a result of the notarial. No, I'm saying that's what the immigration judge found. That's correct, but the corrected fact is, and what the petitioner has testified, is that the notarial never informed him about the asylum. Despite his knowledge of his problems in Lebanon, he told him... And the immigration judge disbelieved his testimony. We're kind of arguing in circles here, but it's all contested fact. Your Honor, we don't believe it was a contested, except that... Well, there's no... Your position seems to be that a credibility determination based on failure to believe the reason for why this is late somehow can't be based on inconsistencies and discrepancies in the petitioner's own testimony. And I don't think that that is the law. I understand, but we don't have any discrepancies or inconsistencies in the petitioner's testimony with respect to the meeting with the notarial. There is no discrepancy or inconsistency. The judge disbelieved him just because of his speculation and conjecture. And actually, there is evidence to the contrary in this case, Your Honor. For example, the immigration judge said, you know what, the ineffective assistant should have been filed against the first counsel. But there is no evidence in the record to show that the first counsel was even notified of the petitioner's problem. He was only retained to file an extension request. And the petitioner did the extension request because his visa was expiring and then, you know, pending his effort to legalize his status. The immigration judge said, well, you know what, you may have met the notarial within one year. However, you paid him $2,000. Two and a half years later. However, the immigration judge discounted the petitioner's testimony that he told him, you are okay for now. Your status is legal because the Department of Homeland Security never responded to your visa extension. And your only option to remain in the country is to file a labor certification. And relying to his detriment, you know, the petitioner believed him. And he only became aware of the fraud in 2003. This court precedent in Lopez v. INS is similar to this case. The fraud was enough to tell the statute. And we're asking this court that the fraud in this case is exactly like the Lopez. My client relied to his detriment and filed within a reasonable time of his knowledge of the asylum. Now, the immigration judge also dismissed the ineffective assistant. Like I said, he imputed the knowledge of asylum to my client just because his brother-in-law told him to come in from Lebanon. And he unequivocally stated, administrative record page 345, my brother-in-law does not know anything about asylum. The immigration judge said, well, you have extensive contact with the Lebanese community here. Counsel, before you run out of time, could you address the, if we do reach the merits, the immigration judge found evidence of firm resettlement in Mali. And why doesn't substantial evidence support that determination on the merits? Actually, Your Honor, in this, for the firm resettlement, he has misplaced the burden first on the petitioner to establish a rebuttable presumption. It was the DHS burden to show an initial or prima facie case of firm resettlement in light of this court's precedence. So in that regard, you're asking for a remand, not a reversal? A remand and a reversal, Your Honor, for multiple issues. He misplaced the burden with respect to the firm resettlement. He has dismissed the ineffective assistant's claim despite all evidence showing that my client was defrauded. Your client was there for nine years, and previous decisions of this court show firm resettlement being affirmed after much shorter periods of time. That is correct, Your Honor, but some of these evidence, like for example, Shio v. INS, has rested on there is no evidence to the contrary. But here there was evidence that petitioner was never, his stay was never authorized by the Mali government. He was never offered any training. Didn't he get a visa from the Mali government? No, Your Honor. He only had a visa, and he said he was only able to obtain this visa through a merchant who had some contacts in Mali, and he was able to do it just, you know, on a business contract. But the Mali government never authorized his stay. He was never offered any permanent settlement. And as a matter of fact, there are other cases with this court where this court found after 16 years of staying in Guatemala, Guatemala that fled to Mexico and remained there, and this court found no permanent settlement. Let's address just finally the adverse credibility finding against my client with respect to the medical certificate. Now, the immigration judge based on also his speculation and conjecture stated that the medical record is not authentic or reliable. However, he based that just because the doctor, there was no contemporaneous medical records to support him. He said, how could the doctor write such letter with specificity? I had the same question. Okay, Your Honor. Petitioner said to his knowledge, he doesn't know if there's any contemporary, but we don't know whether the brain surgeon, the hospital, we don't know what the... It's his burden, isn't it? That is correct, but it was never an issue at the court except when the judge asked him, how did he write it? He said, I asked somebody to go to the doctor and provide me this record. We don't know what the doctor has looked at, maybe examined the charts, his notes. Petitioner doesn't aware whether such medical records exist. And also the immigration judge said that this letter is not authentic because the doctor said, petitioner is currently 43, versus when the incident happened, it was 38. However, he explained it. He explained that at the time the letter was issued, he was in proceedings and he was currently 43 years of age. Last issue, Your Honor, the immigration judge didn't give my client any opportunity to address the letter from Al-Kata'ib party, which indicated that he was a fighter until 99. However, petitioner testified that during his entire time in Mali, he maintained being in the resistance. Thank you, Your Honor. May it please the Court, my name is Jan Redfern. I'm appearing on behalf of the respondent, the Attorney General. Your Honors, the government would ask that the Court deny the petition for review of this adverse credibility asylum case. Because substantial evidence supports the agency's decision that the petitioner was not credible, both with respect to the circumstances surrounding the one-year asylum application and the filing of that application, and with regard to the merits of the withholding claim. Would we deny the petition, or would we dismiss it in part for lack of jurisdiction? Correct, Your Honor. Dismiss the asylum, the one-year asylum application. But what's the relationship with the underlying claim for, I'm sorry, what's the relationship between the underlying claim for asylum and the withholding claim? They're essentially the same claim. So even if the Court found, first of all, that it had jurisdiction to review the one-year asylum, and then reviewed that, it doesn't matter whether he met the one-year bar, because the adverse credibility determination of the withholding goes to the asylum claim anyway. So even if the Court were, for instance, tempted to remand for the asylum claim, it wouldn't matter because he was found not credible with respect to the merits of the withholding claim. Okay. Could you address that then? The withholding claim, right, Your Honor. Yeah, and the credibility determination with respect to the merits. Yes, Your Honor. In this case, the evidence does not compel a finding that he presented credible evidence for his claims of either withholding, a removal, or CAT. He submitted discrepant evidence in support of his claims. First of all, he submitted a letter from the Lebanese Social Democratic Party saying that he was a fighter in this Christian militia party from 1975 until 1999. However, he had other inconsistent evidence. Contrary to that, he testified he was living in Mali from 1998 until 1997. So that's inconsistent with a claim that he was a fighter in Lebanon during the time frame that he alleged. He also lived in the United States since April of 1998. And he did testify that he was living in Mali for nine years. And he was given an opportunity to explain that inconsistency. And he says, well, I maintain contact with the party. But he didn't explain how it was that he was alleged to be a fighter. There was no evidence. Was there any evidence that he was threatened or anything while he was in Mali? There was no evidence of that. He lived peacefully in Mali for nine years and returned a couple of times to Lebanon during those nine years, which also undermined his credibility. If he were safe in Mali, why did he feel the need to return to Lebanon where he claimed his family was threatened, his father's house was vandalized, and the Syrian intelligence officials would be looking for him? So there's no explanation, no credible explanation of that. Now, he claims in his brief that the discrepancies were minor and didn't go to the heart of his claims. But that's contrary to the evidence because the crux of his claim is that the Syrian intelligence officials would sort him out and mistreated him because of his relationship and his inability to provide a consistent time period of when he was in that party undermined his claims. As far as the doctor's letter, the immigration judge found not only did he fail to explain the discrepancy there, basically the doctor's letter, when you look at it, doesn't even give a year that he was allegedly injured, just says he was injured on January 15th because he was in a fight, which doesn't really support his claim. He said that he had contemporaneous medical records. He was evasive about that testimony when asked to explain it. He first said, well, if I knew I was going to apply for asylum, I would have brought those records. And then he was pressed if he had records in the first place. And he stated he didn't because he moved around a lot. And then he stated that the hospital didn't have records because it had its own problems. And then finally, in 1998, despite the fact that he had a valid visa in Mali until the year 2000, he was asked to explain that. He gave evasive, incredible testimony regarding the fact that his friend helped him get this visa. But it's the government of Mali who stamped his passport and gave him a visa that was valid until 2000. Additionally, when viewed punitively, and then when he came to the United States in November 2004, he allowed his wife and children to return to Lebanon, to the very house that he claimed that was three kilometers away from where he was allegedly captured. Is it true that he admitted that he had nothing else with respect to the doctor's letter, that he had no other documents to support his claim that he was beaten and injured? I would say that the record at page 263 to 265 where he testifies he had no other evidence. And there was no evidence from anyone else regarding his claim. So that the argument that the doctor could have been relying on contemporaneous records seems to be belied by that. Yes, and he stated that in fact there were no records that existed. Also, while living in Mali, he acquired a visa in 1995, and as late as 1997, which belies a claim that he was fleeing persecution in 1998. And again, asked to explain that inconsistency, why did you receive a visa in 1995 if you never even planned to come to the United States? He said he just wanted to have the visa. There was really no reason for it, he just wanted to have it. And the immigration judge, again, there's testimony at page 321 to 325 and contradicted that testimony and said, well, he never even contemplated coming to the United States. Right, I think we understand the government. Thank you. If there are no further questions, thank you very much. Thank you. Are there any further questions? If not, the matter is to argue will be submitted for decision. We'll hear the next case, which is Hamoud versus Holder.
judges: Jarvey, Schroeder, Tallman